UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVIN JAMES HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-1591 (RC) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff is a federal prisoner appearing *pro se*.[1] He has sued the Department of Justice's Criminal Division and the following DOJ components under the Freedom of Information Act ("FOIA"): Executive Office for United States Attorneys ("EOUSA"), Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the Federal Bureau of Prisons ("BOP"). Pending before the Court is the Defendants' Partial Motion to Dismiss or in the Alternative for Summary Judgment, brought on behalf of all but the FBI, ECF No. 15.[2] Upon consideration of

---

[1] Convicted in the U.S. District Court for the District of South Carolina, plaintiff is serving a life sentence "for conspiring to participate in racketeering activity . . .; conspiring to possess with intent to distribute 280 grams or more of cocaine base . . . ; two counts of possessing with intent to distribute cocaine base . . . ; using a telephone to facilitate a drug conspiracy . . .; and interfering with commerce by robbery . . . ." *United States v. Hall*, 629 Fed. App'x 504, 505 (4th Cir. 2015).

[2] The FBI, having finally released records to plaintiff, intends to file a motion for summary judgment. *See* Status Report, ECF No. 24.

defendants' motion and reply, ECF No. 20, and plaintiff's opposition, ECF No. 17, and for the reasons explained below, the Court will grant summary judgment to ATF, the Criminal Division, and DEA, and dismiss the claim against BOP without prejudice, but deny relief to EOUSA.

## II.  BACKGROUND

As set out in Defendants' Statement of Material Facts Not in Genuine Dispute, ECF 15-7, the relevant occurrences are as follows.

**1.  Request to ATF**

In a letter dated July 24, 2014, plaintiff requested "copies of any and all documents, records, papers, files, communications, notes, memos, logs, receipts, or information or data in any form, in any way related to involving, referencing or mentioning" himself or his U.S. district court criminal case number.  Ex. A to Decl. of Stephanie M. Boucher, ECF No. 15-3. Following a search of its databases by plaintiff's name, social security number and date of birth, and inquiries to ATF's Louisville and Charlotte Field Divisions, ATF informed plaintiff by letter dated January 29, 2016, that it had located no responsive records, and it further informed plaintiff of his right to appeal to the Office of Information Policy ("OIP") within 60 days of the decision. *Id*. ¶¶ 5-19 and Ex. C.  OIP has no record of receiving an administrative appeal from plaintiff. *Id*. ¶ 22.

**2.  Request to BOP**

On December 7, 2015, BOP received a request from plaintiff that sought "all phone records in the possession of the Federal Bureau of Prisons."  Attach. 1 to Decl. of Ronald L. Rodgers, ECF No. 15-4.  In a response dated that same day, BOP informed plaintiff that his request failed to "adequately describe a BOP record with enough details to allow us to conduct a

search" and invited plaintiff to "resubmit with more details." Attach. 2. On appeal from that determination, OIP agreed with BOP and invited plaintiff to submit a new request to BOP if he had "additional information about the specific phone records to which you are referring, such as whose phone records or what time period or which facility[.]" Attach. 5. OIP also informed plaintiff of his right to file a lawsuit. BOP has no record of receiving "any correspondence from plaintiff by which he sought to clarify his initial request[.]" Rodgers Decl. ¶ 9.

3. **Request to DEA**

> On November 24, 2015, DEA received a request from plaintiff that sought
>
>> all arrest records, investigation reports, investigative reports, final and closing investigation reports, transcript order forms, internal memorandums from the prosecuting AUSA to the investigating agents mugshot profiles, the [DEA] case initiation memorandum, the agents handwritten notes and notations, draft exhibits, photographs, video tapes, audio tapes and all information, documents, data, reports pertaining to me.

Ex. A to Decl. of Katherine L. Myrick, ECF No. 15-5. Following a search of the Narcotics and Dangerous Drugs Information System (NADDIS) by plaintiff's name, social security number and date of birth, DEA informed plaintiff by letter dated December 3, 2015, that it had located no responsive records. Myrick Decl. ¶ 14 and Ex. B. By letter dated May 10, 2016, OIP informed plaintiff that "DEA's action was correct and that it conducted an adequate, reasonable search for such records"; it further informed plaintiff of his right to file a lawsuit. Ex. E.

4. **Request to the Criminal Division**

In a letter to the Criminal Division dated November 11, 2015, plaintiff requested the same records that he had requested from DEA, plus grand jury transcripts, "the prosecuting attorney's handwritten notes and notations, . . . witness lists, draft voir dire, legal research memorandas [sic], guilty plea transcripts, [and] cooperation agreements[.]" Decl. of Peter C.

3

Sprung ¶ 6 and Ex. A, ECF No. 15-2.  This request appears to have included a Certification of Identity signed by plaintiff.  *Id.*  By letter dated December 23, 2015, the Criminal Division informed plaintiff that his request for records about his prosecution was "misdirected" and was "routed to EOUSA for processing and a direct response to you."  *Id.*, Ex. B.  The letter included EOUSA's contact information should plaintiff "have any questions about the status of [his] routed request."  *Id*. Meanwhile, in an appeal to OIP also dated December 23, 2015, plaintiff stated that he had submitted a FOIA request to the Criminal Division and to EOUSA but had "not received any response from either agency."  Ex. C.  In a letter dated March 1, 2016, OIP informed plaintiff that his appeal file was closed as moot in light of the Criminal Division's December 23, 2015 response to his request.  Ex. D.

During the course of this litigation, the Criminal Division "[o]ut of an abundance of caution" conducted a search on the chance that it might have responsive records if the prosecution involved electronic surveillance under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III").  Sprung Decl. ¶ 12.  The Criminal Division staff searched "the one records system that could possibly contain [responsive] information," that of the Electronic Surveillance Unit, but located no responsive records.  *Id*. ¶¶ 13-14.

5.  **Request to EOUSA**

In a FOIA request dated November 16, 2015, and directed to the United States Attorney's Office for the District of South Carolina, plaintiff sought "all case files, documents, audio tapes, video tapes, phone records and any and all documents, records, audio recordings in the possession of your agency . . . pertain[ing] to criminal case numbers #25525FO and #56823EQ."  Decl. of David Luczynski ¶ 4 and Ex. A, ECF No. 15-6.  In a letter dated December 28, 2015,

EOUSA informed plaintiff that before it could process the request, it would need either "a notarized example of his . . . signature or a certification of identity under penalty of perjury." *Id*., Ex. B. EOUSA enclosed a form "Certification of Identity" for plaintiff's use and then informed him that the file on that request was closed, that he could submit a new request with the required information, and that he could appeal that "final action" to OIP within 60 days. Ex. B at 2. But at this point in time, it appears that EOUSA would have possessed plaintiff's signed Certification of Identity re-routed as part of his request to the Criminal Division.

Meanwhile, plaintiff had submitted his December 23, 2015 appeal to OIP based on the purported failure of both EOUSA and the Criminal Division to respond to his request. Ex. C. In a letter dated March 16, 2016, OIP informed plaintiff that his appeal file was closed as moot in light of EOUSA's December 28, 2015 response to his request. *Id*., Ex. E.

Plaintiff filed the instant Complaint on August 5, 2016, based on defendants' alleged failures to respond to his requests "in a timely manner," and specifically "within the statutory time limits," and "to turn over documents." Compl. at 4.

### III. LEGAL STANDARD

The FOIA confers jurisdiction on the district court to enjoin an agency from improperly withholding records maintained or controlled by the agency. *See* 5 U.S.C. § 552(a)(4)(B); *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)). An agency's disclosure obligation is triggered by its receipt of a request that "reasonably describes" the records sought and "is made in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to follow." 5 U.S.C. § 552(a)(3)(A); *see Citizens for Responsibility and Ethics in*

5

*Washington v. FEC*, 711 F.3d 180, 185, n.3 (D.C. Cir. 2013) ("Of course, the duties that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request.") (citation omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp.2 d 68, 73 (D.D.C. 2007)). A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In a FOIA case, an agency is entitled to summary judgment when it demonstrates that there are no material facts in dispute as to the adequacy of its search for or production of responsive records. *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 21 (D.D.C. 2012). An inadequate search for records constitutes an improper withholding under the FOIA. *See Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) (citations omitted). Thus, "[a] requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). The Court must then determine the adequacy of the agency's search, guided by principles of reasonableness. *See Campbell v. U.S.*

6

*Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). The Court "may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.' " *Valencia-Lucena*, 180 F.3d at 326 (quoting *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C .Cir. 1990)).

Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search, *id*., but "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007) (citations omitted); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (citation omitted).

A district court reviewing an agency's motion for summary judgment conducts a de novo review of the record, and the responding agency bears the burden of proving that it has complied with its obligations under FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *see also In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92-93 (D.D.C. 2008) (citing *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003)). The district court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester. *See Willis v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008) (citing *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)). Accordingly, summary judgment for an agency is appropriate only if the agency proves that it has "fully discharged its [FOIA] obligations [.]" *Moore*, 916 F. Supp. at 35 (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)).

## IV. ANALYSIS

### A. Failure to Exhaust

Defendants argue first that dismissal is warranted in part because plaintiff failed to timely exhaust his administrative remedies with regard to his requests for records from ATF, BOP and EOUSA. Defs.' Mem. at 19-24, ECF No. 15-1.[3] "[A]lthough FOIA cases typically are decided through summary judgment, courts in this Circuit analyze failure to exhaust administrative remedies motions under Rule 12(b)(6)." *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 260 (D.D.C. 2014), citing *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (vacating grant of summary judgment and remanding FOIA case "with instructions to the district court to dismiss the complaint under [Rule] 12(b)(6) . . . for failure to exhaust administrative remedies") (other citations omitted).

In FOIA cases, "[e]xhaustion of administrative remedies is generally required before seeking judicial review 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.' " *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). As the Court of Appeals has explained, although exhaustion of a FOIA request "is not jurisdictional because the FOIA does not unequivocally make it so," *Hidalgo*, 344 F.3d at 1258, the failure to exhaust still "precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar," *id*. at 1258-59 (quoting *Oglesby*, 920 F.2d at 61) (other citation omitted). Therefore, "[e]xhaustion can be a substantive ground for rejecting a FOIA claim in litigation." *Bayala v. United States Dep't of Homeland Sec.,*

---

[3] All page citations are those assigned by the electronic case filing system.

*Office of Gen. Counsel*, 827 F.3d 31, 35 (D.C. Cir. 2016). However, an agency's exhaustion defense becomes moot if it "abandon[s] its previous [administrative] determination, make[s] a *sua sponte* disclosure of documents, [,] craft[s] [an] explanation for [a] different withholding decision in the district court, . . . which [goes] far beyond the original, perfunctory administrative decision," and then moves for summary judgment "on the merits of that new withholding decision[.]" *Id*. and n.1.

Plaintiff does not seriously refute that he failed to exhaust his administrative remedies, and he offers that "any dismissal" be without prejudice. Pl's Opp'n at 1. The Court finds that dismissal on this ground is appropriate as to BOP "not only because plaintiff has failed to exhaust those claims but also because no withholding–improper or otherwise–has occurred." *Dugan v. Dep't of Justice*, 82 F. Supp. 3d 485, 498 (D.D.C. 2015) (citing *Judicial Watch, Inc. v. Exp.–Imp. Bank*, 108 F. Supp. 2d 19, 27-28 (D.D.C. 2000); *Tereshchuk v. Bureau of* Prisons, 67 F. Supp. 3d 441, 453 (D.D.C. 2014)).

### 1. BOP

Plaintiff asserts that a materially factual dispute exists as to BOP's response to his sweeping FOIA request for "all phone records in [its] possession." *See* Pl.'s Opp'n Mem. at 3-4. But BOP's description of its massive telephone systems, *see* Rodgers Decl. ¶¶ 4-5, 10, shows why that request was simply too broad "to enable[ ] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Pinson v. United States Dep't of Justice*, 245 F. Supp. 3d 225, --- (D.D.C. 2017) (quoting *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (other citations omitted)). " 'Broad, sweeping requests lacking specificity are not sufficient' " to trigger an agency's disclosure obligations, *id*.

9

(quoting *Dale*), and plaintiff did not follow OIP's advice to resubmit a request providing details, "such as whose phone records or what time period or which facility[.]" Rodgers Decl., Attach. 5. Therefore, defendants' motion to dismiss the claim against BOP for failure to exhaust will be granted. *See Dale*, 238 F. Supp. 2d at 103 ("An agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies.") (citations omitted)).

### 2. EOUSA

Plaintiff asserts that a materially factual dispute exists as to whether he provided EOUSA with sufficient information to verify his identification in order to process his request, but his opposition brief does not directly counter EOUSA's declaration that he did not. *See* Pl.'s Opp'n Mem. at 3-4, ECF No. 17; *cf.* Nov. 9, 2016 Order at 2 (informing plaintiff that "mere statements that the moving party's affidavits are inaccurate or incorrect are not sufficient" to defeat summary judgment). EOUSA did not substantively respond to plaintiff's request because it claimed that plaintiff had failed to provide a Certification of Identity. Accordingly, EOUSA closed out the request and told plaintiff to submit a new one, *see* Luczynski Decl., Ex. B. But at that point in time, EOUSA should have been in possession of plaintiff's Certification of Identity that was re-directed to it from the Criminal Division. Having received no briefing from the parties on this issue, the Court cannot determine what significance, if any, that fact has on EOUSA's failure to exhaust arguments.

Moreover, EOUSA has not indicated what, if anything, it did with the request itself that the Criminal Division re-directed to it. If nothing, that un-responded to request may be ripe for

consideration by this Court as having exceeded the statutory time periods and, thus, having been constructively exhausted.

Because neither party has acknowledged the Certification of Identity or addressed its implications nor have they addressed the outcome of the re-routed request, the Court is not in a position to fully assess EOUSA's failure to exhaust arguments. Thus, as to this aspect of the complaint, the Court will deny EOUSA's motion without prejudice to reconsideration of a renewed motion that addresses the significance, if any, of the Certification of Identity and what actions, if any, EOUSA took in response to the routed request and any appropriate relief. Of course, EOUSA may alternatively decide to process the request and move for summary judgment on the merits.

### 3. ATF

ATF has conducted a search for records, provided plaintiff with a no-records response, and moved for summary judgment on the adequacy of its search. Therefore, defendants' motion to dismiss the claim against ATF for failure to exhaust is denied as moot.

### B. ATF's Search

ATF's declarant states that upon receiving plaintiff's request in February 2015, an ATF Specialist in the Disclosure Division searched the Treasury Enforcement Communications System ("TECS") and N-Force, "which are two law enforcement databases that would most likely contain information pertaining to Plaintiff." Boucher Decl. ¶ 6. TECS is a broad-based "computerized information system designed to identify individuals and businesses suspected of or involved in violation of federal law." *Id*. ¶ 7. N-Force "is a case management system designed to support ATF law enforcement operations and acts as a single-point of data entry

system, which enables users to store, utilize and query investigative information, and to prepare investigative documents." *Id*. ¶ 8. N-Force is the "official case file of record for documenting investigative activity and information[.]" *Id*.

ATF staff searched the foregoing databases by plaintiff's name, social security number, and date of birth. In addition, staff searched ATF's Louisville Field Division, since plaintiff was then incarcerated at the U.S. Penitentiary McCreary in Pine Knot, Kentucky, and the Columbia Field Office of ATF's Charlotte Field Division, which covers the geographic area in South Carolina where plaintiff was tried and convicted. None of the searches yielded responsive records. *See* Boucher Decl. ¶¶ 10-16. In response to this lawsuit, "the Disclosure Division again searched the TECS and N-Force databases" by plaintiff's name, social security number, and date of birth and again located no responsive records. *Id*. ¶ 17.

Plaintiff has not questioned ATF's search, and the Court is satisfied from the declarant's detailed description of the filing systems searched and the search methods employed that ATF conducted a search reasonably calculated to locate responsive records. *See Fowlkes v. Bur. of Alcohol, Tobacco, Firearms & Explosives,* 67 F. Supp. 3d 290, 299-300 (D.D.C. 2014) (concluding that ATF's search of TECS for responsive records was reasonable); *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 160-62 (D.D.C. 2012) (concluding that ATF's search of TECS and N-Force were adequately conducted). Hence, ATF, having satisfied its FOIA obligations, is entitled to judgment as a matter of law.

## C. Criminal Division's Search

At the administrative level, the Criminal Division routed plaintiff's request to EOUSA "because it did not participate in Plaintiff's prosecution." Sprung Decl. ¶ 12. In response to

this lawsuit, however, the Division's staff conducted a search since "there was a theoretical possibility" that its Office of Enforcement Operations's ("OEO") Electronic Surveillance Unit could possess records responsive to plaintiff's broadly worded request. *Id*. The Division's declarant explains that in cases involving racketeering activity, such as plaintiff's, the prosecutor might need to obtain permission "from the appropriate DOJ official" to conduct electronic surveillance pursuant to Title III. Under DOJ's internal procedures, "the prosecutor must submit the request to OEO's Electronic Surveillance Unit, which reviews the request to ensure that it complies with Title III." Sprung Decl. ¶ 12. Such requests are maintained in "an electronic system," which contains "data fields" that are searchable by "the lead subject's name or a phone number." *Id*. ¶ 13.

A search by plaintiff's name located no responsive records, and the "FOIA request did not contain a telephone number that would have enabled a telephone number search."[4] *Id*. The declarant avers that the "Criminal Division searched the one records system that could possibly contain" responsive records. *Id*. ¶ 14. Plaintiff has not questioned the search, and the Court is satisfied from the declarant's description that the Criminal Division's search was reasonably calculated to locate potentially responsive records based on the information provided in the FOIA request. *See Spears v. United States Dep't of Justice*, 139 F. Supp. 3d 79, 87 (D.D.C. 2015) (finding the Criminal Division's name and telephone number search for

---

[4] On direct appeal of his convictions, plaintiff had in fact challenged unsuccessfully "the district court's admission of evidence secured by wiretap." *United States v. Hall*, 629 Fed. App'x 504, 506 (4th Cir. 2015) (per curiam). But the opinion does not reveal who among the conspirators was the subject of a wiretap or the targeted telephone number(s).

responsive records in OEO's database "reasonably executed"). Hence, the Criminal Division, having also satisfied its FOIA obligations, is entitled to judgment as a matter of law.

### D. DEA's Search

DEA's declarant avers that any information responsive to plaintiff's request "was reasonably likely to be found in the DEA Investigative Reporting and Filing System ("IFRS")," which "contains all administrative, general and investigative files compiled by DEA for law enforcement purposes." Myrick Decl. ¶¶ 10, 12. Information is retrieved through the "DEA Narcotics and Dangerous Drugs Information System ("NADDIS")," utilizing an individual's name, social security number "and/or date of birth." *Id*. ¶ 13.

On the same day that DEA received plaintiff's request, a Government Information Specialist in "the DEA office responsible for the receipt, processing and release of DEA information requested under the FOI/PA," *id*. ¶ 1, conducted a NADDIS query" by plaintiff's name, date of birth and social security number and located no responsive records, *id*. ¶ 14. Plaintiff has not questioned DEA's search, and the Court is satisfied that it was reasonably calculated to locate responsive records. *See Dugan*, 82 F. Supp. 3d at 501-02 (finding NADDIS query to be adequate). Hence, DEA, having satisfied its FOIA obligations, is too entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court will grant summary judgment to ATF, the Criminal Division, and DEA, and dismiss plaintiff's unexhausted claim against BOP without prejudice.

14

But dismissal is denied with respect to EOUSA. A separate order accompanies this Memorandum Opinion.

                                                    _____/s/_____
                                                  RUDOLPH CONTRERAS
                                                  United States District Judge

Date: September 19, 2017